## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

GAVIN THOMAS,

                         Petitioner,

      v.                                  9:18-CV-706
                                               (BKS-ATB)

EARL BELL,

                       Respondent.

GAVIN THOMAS, Petitioner pro se
PRISCILLA I. STEWARD, Asst. Attorney General for Respondent

ANDREW T. BAXTER, United States Magistrate Judge

### REPORT-RECOMMENDATION

Petitioner filed this habeas corpus petition pursuant to 28 U.S.C. § 2254. (Petition ("Pet."), Dkt. No. 1 at 1). Petitioner challenges a judgment of conviction entered on November 23, 2015 in Albany County Court, based on his guilty plea to Criminal Sale of a Controlled Substance in the Third Degree under § 220.39[1] of the New York Penal Law ("Penal Law"), a class B felony. (Petitioner's Appellate Brief (State Court Record ("SR") at 123).[1]

Pursuant to a plea bargain, the Honorable Stephen W. Herrick sentenced petitioner as a second violent felony offender to a determinate period of incarceration of six years with three years of post-release supervision, directed petitioner to pay a $325.00 surcharge and victim fee, a $50.00 DNA fee, and ordered a six-month

---

[1] Respondent has consecutively Bates-stamped the state court record at the bottom of the page. Thus, the court will cite to the pages of the state court record as numbered by the respondent - (SR).

suspension of petitioner's New York driver's license. (*Id.*) Petitioner's six-year sentence in this case was ordered to run concurrently with a fifteen year sentence imposed by the Honorable Peter A. Lynch, Albany County Court Judge, after petitioner's conviction after trial on an unrelated weapons charge. (Respondent's Br. at 1) (Dkt. No. 7-1). On February 15, 2018, the Appellate Division, Third Department, affirmed petitioner's conviction, and the New York Court of Appeals denied leave to appeal on May 31, 2018. *People v. Thomas*, 158 A.D.3d 953 (3d Dep't.), *lv. denied*, 31 N.Y.3d 1088 (2018).

Petitioner raises the following claims: 1) petitioner's guilty plea was not knowingly, intelligently, and voluntarily entered; 2) petitioner is entitled to specific performance of the three and a half-year sentence, offered by the prosecution at petitioner's July 13, 2015 hearing; 3) petitioner received ineffective assistance of trial counsel; 4) the trial court's finding that petitioner violated the terms of his plea agreement must be vacated; and 5) any deficiencies in petitioner's *pro se* post-allocution motion to withdraw his plea must be excused as exceptions to the preservation rule.

Respondent filed an answer, together with the relevant state court records. (Dkt. Nos. 7, 8). Petitioner filed a traverse. (Dkt. No. 9.) Respondent argues that (1) petitioner's claim that his guilty plea was not voluntary is belied by the record, and the Appellate Division reasonably denied it, and (2) the Appellate Division reasonably denied petitioner's claim that his counsel was ineffective. (Dkt. No. 7-1.) For the following reasons, this court agrees with respondent and will recommend denial of the

2

petition.

## I.    Relevant Facts and Procedural History

### A.    February 2, 2015 Arraignment

Petitioner was arraigned before Judge Herrick on a one-count indictment, charging him with criminal sale of a controlled substance in the third degree in violation of N.Y. Penal Law § 220.39(1), a ***Class B felony***. (SR at 10, 16.)  At his arraignment, petitioner was represented by Attorney Trevor Hannigan. (SR at 17.) Petitioner entered a plea of not guilty. (*Id.*)

### B.    July 13, 2015 Hearing and Waiver

Petitioner was scheduled for *Dunaway*[2], *Mapp*[3], and *Wade*[4] suppression hearings on July 13, 2015. (July 13, 2015 Hearing, SR at 43.)  On that date, petitioner appeared before Judge Herrick with a new attorney, Mr. James Tyner. (SR at 43.)  Judge Herrick discussed the prosecutor's proposal to resolve petitioner's drug indictment by a guilty plea to the attempted criminal sale of a controlled substance in the third degree, a ***Class C felony***, in exchange for a three and a half-year sentence as a violent predicate offender,[5] in addition to a three-year period of post-release supervision, fines, and fees. (SR at 43-44.)  Petitioner would also agree to waive his suppression hearings and his

---

[2] *Dunaway v. New York*, 422 U.S. 200 (1979) (confession).

[3] *Mapp v. Ohio*, 367 U.S. 643 (1961) (motion to suppress evidence obtained as the result of an unconstitutional search).

[4] *United States v. Wade*, 388 U.S. 218 (1967) (motion to suppress suggestive identification).

[5] Petitioner was a violent predicate offender due to a weapons conviction from 2005. (SR at 104.)

3

right to appeal. (SR at 45-46.) This proposal would be "left open," pending the disposition of the weapons charge which was in front of Judge Lynch. (SR at 45.)

In accordance with this proposal, petitioner waived his *Dunaway*, *Mapp*, and *Wade* hearings on the advice of Mr. Tyner. (SR at 47-48.) Judge Herrick emphasized the irrevocable nature of the suppression hearing waiver, and petitioner confirmed his desire to waive the hearings. (SR at 47-48.) The judge then explained as follows:

> You understand the proposal here, that's three and a half years determinate and three years of post-relief supervision concurrent if you're convicted of the matter in front of Judge Lynch. If you're not convicted in front of Judge Lynch or if that indictment is dismissed for some reason on its own motions, then this offer would still be available to you. However, it wouldn't be in reference to another disposition because that will have been resolved. If you go to trial on this indictment, then all bets are off and whatever happens after trial happens. But you would have an opportunity to accept or reject this offer, and if it occurs after Judge Lynch's is resolved, once you're sentenced on Judge Lynch's, I would agree to impose a sentence concurrent with any sentence imposed by Judge Lynch.

(SR at 46.) Although petitioner withdrew his suppression motions in accordance with this proposal, he did not plead guilty at that time.

### C.    November 18, 2015 Plea Proceedings

On November 18, 2015, petitioner again appeared before Judge Herrick. (November 18, 2015 Hearing, SR at 50.) That morning, petitioner had been sentenced by Judge Lynch for the unrelated weapons charge. (SR at 50.) Judge Herrick outlined a new plea proposal for petitioner. (*Id.*) This proposal involved a plea, as a violent

4

predicate offender, to the original indictment, a Class B felony. (*Id.*)  The judge would impose a sentence of *six* years incarceration, with three years of post-release supervision, together with costs, fees, and suspension of petitioner's driver's license. (*Id.*)  The sentence would run concurrently with the sentence imposed by Judge Lynch. (SR at 50).  Judge Herrick told petitioner that if "at any time during today's proceedings you don't understand something or you have a question, then let me know." (SR at 51-52).  Petitioner was sworn in. (SR at 52.)  Judge Herrick asked petitioner and his counsel whether they understood and agreed to the plea proposal, to which both counsel and petitioner responded in the affirmative, stating that they agreed to resolve the indictment in accordance with that proposal. (SR at 51-52).

Prior to the actual plea allocution, Judge Herrick stated that he wanted to "explain something on the record." (SR at 53).  Judge Herrick made reference to the July 13th hearing, and explained that it was the court's and the prosecutor's understanding, but "not necessarily . . . [Mr. Tyner's]," that the agreement involving the plea to a reduced drug charge,[6] together with the three and one half year sentence, was only available if plaintiff pled guilty to the weapons charge before Judge Lynch. (*Id.*)  However, petitioner opted to go to trial on the weapons charge and was convicted after trial. (*Id.*)  The prosecutor believed that plaintiff's failure to plead guilty to the weapons charge was a violation of "the understanding," and he "withdrew his consent to the

---

[6] The original charge was criminal sale of a controlled substance, third degree, a Class B felony, while the "reduced" charge would have been attempted criminal sale of a controlled substance, third degree, a Class C felony.

reduction from a B to a C felony [on the drug charge]." (SR at 54).  Judge Herrick then stated that the only way that the prosecutor would consent to the original July 13th proposal was if the three and one half year sentence were ordered to run *consecutively* to the fifteen year sentence imposed by Judge Lynch. (*Id.*)

Judge Herrick stated that the only way that petitioner could get "concurrent" time was if he agreed to plead guilty to the original indictment - not the reduced charge - and Judge Herrick, "over the People's objection," gave the petitioner concurrent time. (SR at 55).  Thus, the petitioner would plead guilty to criminal sale of a controlled substance in the third degree, a class B felony, and be sentenced to a six year determinate sentence, with three years of post-release supervision as a violent predicate offender. (*Id.*)  The judge then explained that even though the term was six years, instead of three and one half years, it would still run concurrently to the fifteen year sentence imposed by Judge Lynch, and it would "not increase the number of years that you will have as a maximum exposure in State Prison . . . ." (*Id.*)

Petitioner stated, under oath, that he wished to proceed with the plea. (SR at 55.) Petitioner affirmed that he understood his right to remain silent, had discussed the matter with his attorney, and they had weighed the strengths and weaknesses of the prosecution's evidence against him. (SR at 55-56.)  Judge Herrick next confirmed that petitioner had discussed legal and constitutional defenses with his attorney, and that petitioner was satisfied with his representation by Mr. Tyner. (*Id.*)  Judge Herrick then asked petitioner whether he had consumed any substances that could interfere with his decision-making capacity, whether he had any health conditions that would impair his

6

ability to make decisions, and whether petitioner was thinking clearly. Petitioner affirmed that he had not consumed any such substances, and that he was thinking clearly. (SR at 58-59.)

Judge Herrick continued with the plea allocution, inquiring whether petitioner felt that anyone was forcing, threatening, coercing, or pressuring him to plead guilty. (SR at 60.)  Petitioner answered in the affirmative. (*Id*.)  Judge Herrick asked if petitioner had misunderstood the question,[7] and petitioner reiterated that he felt as if someone was coercing, threatening, or forcing him to plead guilty. (*Id*.) Based on petitioner's assertion, the court ended the plea proceeding, Judge Herrick withdrew the offer, and scheduled a hearing for November 23, 2015. (*Id.* at 63).

### D.    November 23, 2015 Plea Proceedings

On November 23, 2015, Judge Herrick stated that he had a discussion "in chambers" with the prosecutor and petitioner's counsel, and as a result, the judge would be "willing" to offer petitioner the same plea bargain that he was offered on November 18, 2015. (SR at 64).  That plea, as stated above, would require petitioner to plead guilty to the criminal sale of a controlled substance in the third degree, a class B felony. (SR at 64-65.)  Judge Herrick reiterated that petitioner would receive the six-year statutory minimum sentence for a violent predicate offender. (SR at 65.)   Judge Herrick told petitioner that "[t]he most important aspect of this to you is that it would run

_____

[7] Mr. Tyner also stated that "I believe Mr. Thomas misunderstood the court's question." (SR at 61).  The court stated "I don't think he did.  The Court's withdrawing the offer, and before you leave the courtroom, I will have a hearing date scheduled for the next week or two." (*Id.*)

concurrent to the sentence recently imposed by Judge Lynch." (SR at 65).  Petitioner stated that he wished to resolve the charge in accordance with the plea bargain Judge Herrick described. (SR at 66.)

Once again, petitioner confirmed his understanding of the plea agreement, and his desire to proceed with his plea. (SR at 67.)  Judge Herrick discussed the previous hearing and reminded petitioner that the prior proceeding was terminated because he told the court that he felt that he was being "forced" to plead guilty. (SR at 66.)  Judge Herrick stated that he terminated the previous plea allocution so that petitioner could speak with his attorney, and that the judge was "willing to go forward with this, if that is what you want to do." (*Id.*)  The judge specifically asked the petitioner "Do you want to resolve this in accordance with the plea bargain that I just re-described to you?" (*Id.*)  Petitioner answered in the affirmative, and he was again sworn in by the Clerk. (SR at 67.)

Although the judge did not go through every detail again, he told petitioner that he wanted to make sure that his plea was knowing and voluntary, and he clarified on the record that petitioner had the opportunity to discuss the matter with his attorney after the November 18th proceeding. (SR at 66). This time, petitioner completed the plea allocution, stating that he was pleading guilty freely and voluntarily, and that he reaffirmed all his statements from November 18, 2015, except the claim that he was being forced to plead guilty. (SR at 67-68.)  Petitioner stated that he was pleading guilty because he was, in fact, guilty, and affirmed that he understood the consequences of pleading guilty to a class B felony. (SR at 70-71.)  The court also reminded petitioner

that the maximum sentence for the Class B felony to which he was pleading guilty was a 15 years. (SR at 69.)  Petitioner agreed to waive all other rights and remedies in connection with the matter. (SR at 69-71.)  Along with verbally waiving his right to appeal, petitioner executed a written waiver at Judge Herrick's request. (SR at 71-73.)

Judge Herrick then informed petitioner of his obligation to comply with the terms of his plea agreement, including his obligation to be honest during his pre-sentence interview ("PSI"). (SR at 73.)  Petitioner affirmed his understanding and pled guilty according to the proposal. (SR at 73-79.)  Judge Herrick accepted petitioner's guilty plea. (SR at 77-79.)  Judge Herrick set the sentencing date for December 21, 2015 and told petitioner that he would request an updated presentence report. (SR at 74).  Judge Herrick told petitioner that he would be contacted by a Probation Officer, who would conduct an interview, and that petitioner was required to "cooperate and answer the questions . . . that are relevant to sentencing in this matter truthfully and completely," including being "consistent in [his] acceptance of responsibility" for the crime to which he pled guilty. (SR at 74-75).  The judge made it quite clear that cooperating in the PSI interview was part of the plea agreement. (SR at 74).

The judge also made it quite clear that if petitioner violated any part of his agreement, he would not automatically be allowed to withdraw his plea or create a basis for appeal that he otherwise would not have. (SR at 76.)  Finally, the judge told petitioner that if he pled guilty and then simply changed his mind, the judge would not let him withdraw the plea "unless [he was] legally require to [do so]." (SR at 77.) Petitioner agreed to the terms on the record and pled guilty. (SR at 78-79).

9

### E.    December 21 and 28, 2015 Proceedings

Between petitioner's November 23 guilty plea and his December 21 sentencing hearing, petitioner was contacted for his PSI Report. (December 21, 2015 Hearing, SR at 82.)  Petitioner's counsel stated that he had discussed the contents of the PSI with petitioner, and "[i]t appear[ed] that there was some type of miscommunication concerning the acceptance of responsibility." (SR at 82.)  Apparently, in petitioner's PSI interview, petitioner denied having sold cocaine, despite his guilty plea to having done so. (SR at 83.)  Mr. Tyner confirmed that he had spoken to petitioner, and that petitioner had been truthful during his guilty plea allocution on November 23rd. (*Id*.)  Judge Herrick informed Mr. Tyner that petitioner's denial that he sold drugs could constitute a violation of his plea agreement, and advised petitioner that the judge would convene a later proceeding to address the issue, which could involve bringing the Probation Officer to the hearing to "find out Probation's version of this." (SR at 83.)  The court scheduled the next hearing for December 28th.

On December 28, 2015, Judge Herrick began by reviewing petitioner's "possible plea agreement violation." (SR at 88.)  "Part of the plea agreement was that [petitioner] continue to accept responsibility for what he entered a plea of guilty to." (SR. at 88).  Apparently, during the PSI interview he told the Probation Officer that he did not sell drugs, and that the incident occurred so long ago that he did not recall it." (SR at 88-89).  Mr. Tyner explained that, while he had the opportunity to confer with his client, petitioner told Mr. Tyner that petitioner had a "confession" to make to the court, but refused to enlighten his attorney as to the substance of this "confession." (SR at 88-91.)

When addressed by the Court, petitioner indicated that he did remember his guilty plea of November 23, 2015 and he "kind of" remembered the terms of the plea bargain. (SR at 93.)  The court once again explained the situation to petitioner and explained that his conduct during the PSI could be construed as a violation of the agreement that he made with the court and the prosecutor. (SR at 91-93).  The judge told petitioner that if he violated the plea agreement, he could receive a "different and a greater sentence, which could mean consecutive time." (SR at 93).  Petitioner then stated that he wished to withdraw his guilty plea because he was "confused on what was going on." (*Id*.)

Petitioner explained that he had waived his *Dunaway*, *Mapp*, and *Wade* hearings in reliance on the "plea bargain" that was offered at his July 13, 2015 hearing, in which the People offered a three and a half-year sentence to run concurrently with any sentence on the weapons charge. (SR at 93-94.)  Petitioner stated that he did not understand why that deal was taken "off the table." (*Id.*)  Petitioner stated that he was confused as to why the June 13th agreement had been replaced by the plea bargain whose terms he pled guilty to on November 23, 2015. (SR at 94).  He further complained that he had not been presented with any of the evidence against him in his drug case. (*Id*.)

Judge Herrick rejected petitioner's attempt to withdraw his plea: "You pled guilty to this case. I went through a full plea allocution. You have no basis to withdraw your plea of guilty. That's not going to happen." (*Id*.)  The judge again explained why the June 13th agreement was withdrawn by the prosecutor. (SR at 95).  Judge Herrick

asked petitioner whether he had indeed violated the terms of his plea by denying in his presentencing interview that he sold cocaine. (SR at 95.)  Petitioner did not answer the Court's question, but reiterated that he had been under the impression that the plea bargain to which he agreed carried a three and a half-year sentence, and that this was the reason he pled guilty. (SR at 96.)

Judge Herrick again explained that the People had withdrawn the proposal in which petitioner would plead to a Class C felony and receive a three and a half-year sentence when petitioner decided to go to trial on the weapons charge, rather than resolving the weapons charge by guilty plea. (SR at 95.)  The judge told petitioner that the prosecutor had initially requested that petitioner receive a consecutive sentence in the drug case after petitioner failed to plead guilty before Judge Lynch. (SR at 95.) Over the People's objection, Judge Herrick had offered petitioner a six-year determinate prison sentence to run *concurrently* with his sentence in petitioner's unrelated weapons conviction. (SR at 95.)  Petitioner was adamant that he had been promised three and one half years, and he absolutely did not understand what was going on and why he could no longer have that deal. (SR at 96). He told the judge to "look back on the minutes," and that "you never said nothing about a reason why you took the three and a half years off the table." (*Id.*)  Judge Herrick asked petitioner if he had any comment on whether his statements during his PSI constituted a violation of his plea agreement. (*Id.*) Petitioner responded,  "We don't have a plea." (*Id.*)

Judge Herrick reminded petitioner repeatedly that he had, indeed, pled guilty, and that the agreement included a term of six years incarceration. (SR at 97.)  Petitioner

insisted that he only pled guilty because he thought he was going to get three and one half years. (*Id.*)  For the first time, contrary to what he said during the prior proceedings, petitioner complained that he was not satisfied with his attorney. (*Id*.)  The court asked petitioner's attorney if he had anything to add regarding the plea agreement violation, and counsel stated that "in my client's mind there is a difference between one who is a drug dealer and one who may have sold drugs." (SR at 98).  The court refused to allow petitioner to withdraw the plea and asked Mr. Tyner whether he had anything to add to the PSI, to which Mr. Tyner stated that he did not. (SR at 99).  Judge Herrick commenced sentencing, but adjourned when a question of the petitioner's predicate offense arose[8]. (SR at 99-101.)

### F.   December 30, 2015 Sentencing Proceedings

The court reconvened on December 30, 2015.  Petitioner's counsel told the judge that he had spoken with petitioner after the December 28th court proceeding. (December 30, 2015 Hearing, SR at 105-106).  Petitioner then made a statement to the court, apologizing for the "misunderstanding" at the December 28 proceeding, stating that he meant no disrespect. (SR at 106).  He expressed his wish to be judged "on the actual facts," and stated that he did not deserve a "harsh punishment." (SR at 107.)  Judge Herrick stated that if he found a violation of the plea agreement, and "if [he] were to do anything about that, it would add six years of incarceration to the sentence imposed by

---

[8]This refers to a disagreement between petitioner's representative and the People as to whether petitioner qualified as a violent predicate offender. (Dkt. No. 8 at 102.) Judge Herrick adjourned the court so that the nature of petitioner's predicate offence could be resolved. (*Id*. at 103.)

Judge Lynch . . . ." (SR at 107). The judge reiterated that there was no basis for

petitioner to withdraw his plea and reminded petitioner that the judge told petitioner

that "if [he pled] guilty and then changed [his] mind, [he] would not allow [petitioner]

to withdraw [his] plea of guilty" unless the judge was "legally required to," and the

judge did not believe that was the case. (SR at 108.) However, Judge Herrick also

determined that petitioner's violation of the plea agreement was not "substantial

enough" to warrant the imposition of a "consecutive" sentence, and thus, declined to do

so. (SR at 107.)

The Court then imposed the six year determinate sentence to run concurrently

with petitioner's 15-year weapons sentence, including three years of post release

supervision, together with the various fees and costs, the forfeiture of petitioner's

privilege to operate a motor vehicle for six months, and a waiver of appeal. (SR at 108-

09.)

## II.    **The AEDPA**

### A.    **Legal Standards**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides

that, when a state court has adjudicated the merits of a petitioner's claim, a federal court

may grant an application for a writ of habeas corpus only if "the adjudication of the

claim (1) resulted in a decision that was contrary to, or involved an unreasonable

application of, clearly established Federal law, as determined by the Supreme Court of

the United States; or (2) resulted in a decision that was based on an unreasonable

determination of the facts in light of the evidence presented in the State court

14

proceeding." 28 U.S.C. § 2254(d). *See also, e.g.*, *Noble v. Kelly*, 246 F.3d 93, 98 (2d Cir. 2001); *Brown v. Alexander*, 543 F.3d 94, 100 (2d Cir. 2008). This is a "difficult to meet," and "highly deferential standard for evaluating state-court rulings, which demands that state court decisions be given the benefit of the doubt." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (citations omitted).

Under the AEDPA, a "summary disposition" by the state court constitutes a disposition "on the merits." *Harrington v. Richter*, 562 U.S. 86, 98-99 (2011). In reviewing such summary dispositions, the federal court must "focus on the ultimate decision . . . rather than on the courts' reasoning." *Davis v. Greiner*, 428 F.3d 81, 88 (2d Cir. 2005). A federal court reviewing such a summary disposition must determine "what arguments or theories supported or . . . could have supported the state court's decision; and then must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Harrington*, 562 U.S. at 101-102.

A state-court decision is "contrary to" clearly established federal law if the state court's conclusion on a question of law is "opposite" to that of the Supreme Court or if the state court decides a case differently than the Supreme Court's decision "on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A state court decision involves an unreasonable application of clearly established Supreme Court precedent if it correctly identifies the governing legal principle, but unreasonably applies or unreasonably refuses to extend that principle to the facts of a particular case. *Id*.

Under the AEDPA, a state court's factual findings are presumed correct, unless that presumption is rebutted by clear and convincing evidence.  28 U.S.C. § 2254(e)(1). If the state court failed to decide a claim "on the merits," the pre-AEDPA standard of review applies, and both questions of law and mixed questions of law and fact are reviewed *de novo.  Washington v. Shriver*, 255 F.3d 45, 55 (2d Cir. 2001).

### B.    Application

In this case, the petitioner asserts that the "waiver" of his right to appeal was invalid in addition to his plea being involuntary. (Pet. Ground One).  Although the Appellate Division found that the waiver of petitioner's right to appeal was valid, the court specifically held that "[petitioner's] challenge to the voluntariness of the guilty plea . . . is not precluded by his waiver of appeal and has been preserved by his unsuccessful motion to withdraw his plea." 158 A.D.3d at 953.  The court considered petitioner's voluntariness/counsel[9] claims on the merits.  There is no waiver issue in this case.  Thus, this court will proceed to consider petitioner's substantive claims under the AEDPA standard.

---

[9] The Appellate Division focused its discussion on the voluntariness of the petitioner's plea. 158 A.D.3d at 954.  With respect to petitioner's counsel claim, the Appellate Division held that "[petitioner's] remaining contentions, including that he received ineffective assistance of counsel, have been reviewed and found to be ***lacking in merit***." *Id.* (emphasis added).  As stated above, this "summary" disposition constitutes a decision "on the merits" for purposes of the AEDPA. *Harrington v. Richter*, 562 U.S. at 98-99.

### III.    Voluntariness of Petitioner's Guilty Plea/Ineffective Counsel

#### A.    Legal Standards

##### 1.    Voluntary Plea

"A guilty plea operates as a waiver of important rights, and is valid only if done voluntarily, knowingly, and intelligently, 'with sufficient awareness of the relevant circumstances and likely consequences.'" *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005) (quoting *Brady v. United States*, 397 U.S. 742, 748 (1970)).  A court may determine that a defendant knowingly and voluntarily entered into a plea bargain from, among other things, his allocution statements.  *United States v. Torres*, 129 F.3d 710, 715 (2d Cir. 1997).  Sworn statements made by a defendant in entering his plea carry a "strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).  "A defendant's bald statements that simply contradict what he said at his plea allocution are not sufficient grounds to withdraw the guilty plea." *United States v. Torres*, 129 F.3d at 715.

##### 2.    Ineffective Assistance of Counsel

The court sets a high bar for a claim of involuntariness through ineffective counsel in *Strickland v. Washington*. 466 U.S. 668 (1984). *Strickland* calls for a two-pronged test for such claims: First, a defendant must establish that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 687-88. Second, the defendant must show prejudice, establishing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is "a probability

sufficient to undermine confidence in the outcome." *Id.* An ineffective-assistance claim "must be rejected if the defendant fails to meet either the performance prong or the prejudice prong." *Bennett v. United States*, 663 F.3d 71, 85 (2d Cir. 2011) (citing *Strickland*, 466 U.S. at 697).

When assessing counsel's performance, courts "'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Jackson v. Leonardo*, 162 F.3d 81, 85 (2d Cir. 1998) (quoting *Strickland*, 466 U.S. at 689). Courts should not use hindsight to second-guess sound tactical decisions made by attorneys. *McKee v. United States*, 167 F.3d 103, 106 (2d Cir. 1999) (citing *Strickland*, 466 U.S. at 689).

In evaluating the prejudice component of *Strickland*, a "reasonable probability" that the outcome of the proceeding would have been different means "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. "The likelihood of a different result must be substantial, not just conceivable." *Santone v. Fischer*, 689 F.3d 138, 155 (2d Cir. 2012) (citing *Strickland*, 466 U.S. at 693). Unlike the performance determination, the prejudice analysis may be made with the benefit of hindsight. *McKee v. United States*, 167 F.3d at 106-107 (citing, *inter alia*, *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993)).

The "AEDPA requires the federal habeas court to accord deference to the state court's ruling on claims of ineffective assistance of counsel." *Santone v. Fischer*, 689 F.3d at 154. As the Supreme Court stated in *Harrington v. Richter*:

The standards created by *Strickland* and § 2254(d) are both

18

> "highly deferential," . . . *and* when the two apply in tandem,
> review is "doubly" so. . . .  When § 2254(d) applies, the
> question is not whether counsel's actions were reasonable.
> The question is whether there is any reasonable argument that
> counsel satisfied *Strickland's* deferential standard.

562 U.S. at 105 (citations omitted).

Meeting this burden is "never an easy task . . . [and] establishing that a state

court's application of *Strickland* was unreasonable under § 2254(d) is all the more

difficult." *Premo v. Moore*, 562 U.S. 115, 122 (2011) (citations omitted). *See also Burt*

*v. Titlow*, 571 U.S. 12, 19 (2013) ("AEDPA erects a formidable barrier" to federal

habeas review of an ineffective assistance claim). When evaluating an ineffective

assistance claim under § 2254(d), "[t]he question is not whether a federal court believes

the state court's determination under the *Strickland* standard was incorrect but whether

that determination was unreasonable – a substantially higher threshold." *Knowles v.*

*Mirzayance*, 556 U.S. 111, 123 (2009) (internal quotation marks and citation omitted)

(referring to the "doubly deferential judicial review" that applies to *Strickland* claims

evaluated under § 2254(d)(1)).  Federal habeas courts "must guard against the danger of

equating unreasonableness under *Strickland* with unreasonableness under § 2254(d)"

because "[w]hen § 2254(d) applies, the question is not whether counsel's actions were

reasonable." *Harrington v. Richter*, 562 U.S. at 105. Instead, "the question is whether

there is any reasonable argument that counsel satisfied *Strickland*'s deferential

standard." *Id*.

Because *Strickland*'s standard is a general one, "a state court has even more

latitude to reasonably determine that a defendant has not satisfied that standard" than a federal court does. *Mirzayance*, 556 U.S. at 123 (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Federal courts must deferentially consider the state court's judgment that the strategies taken by defense counsel were reasonable, so that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Id.* at 124 (quoting *Strickland*, 446 U.S. at 690).

### B. Application

As the Appellate Division held, "the plea colloquy establishes that defendant was aware that the prior plea bargain had been withdrawn. [Petitioner] unequivocally acknowledged that he understood the terms of the plea agreement, understood the consequences of entering a guilty plea, had enough time to discuss the matter with counsel and was not being coerced into accepting the plea agreement." *People v. Thomas*, 158 A.D.3d at 954.  The Appellate Division's decision was clearly consistent with the Supreme Court precedent cited above.  As shown above in this court's factual recitation, both petitioner's November 18 and November 23 plea colloquies were framed by a litany of questions from Judge Herrick to petitioner, establishing that petitioner was aware of what he was doing, understood the terms of the agreement, and desired to plead guilty. (November 18, 2015 Hearing, SR at 52-61; November 23, 2015 Hearing at SR 63-79.)

Petitioner's assertion that he was "confused" about the substance of the plea agreement or that he did not understand that he would be getting a six year sentence instead of three and one half years is completely disingenuous.  While it is true that the

sentence originally proposed and discussed at the July 13th hearing was three and one

half years, petitioner did not enter a guilty plea at that time.  While it was unclear on the

July 13th record that the three and one half year proposal was contingent on petitioner

pleading guilty before Judge Lynch, petitioner was clearly informed of that fact at the

November 18th court appearance. (SR at 53-55).  As outlined above, Judge Herrick took

great pains to explain the difference in the two proposals, and even though the

prosecutor asked the court to consider imposing a consecutive sentence, the court

declined to do so. (*Id.*)

In declining to impose the consecutive sentence, the court pointed out to

petitioner that, even though the revised plea agreement involved a six year sentence

instead of three and one half years, petitioner would not be exposed to a longer period

of incarceration because Judge Lynch imposed a fifteen year sentence, and petitioner

would be serving his six year sentence concurrently with the longer sentence. (SR at

55). Petitioner would still be incarcerated after the end of either the three and one half

or the six year sentences.  The court asked petitioner specifically if he understood the

judge's explanation and asked whether petitioner still wished to proceed with the plea.

(*Id.*)  Petitioner himself answered yes to both questions. (*Id.*)

On November 18, 2015, Judge Herrick asked petitioner to confirm his

understanding of the indictment, his wish to proceed with the guilty plea, that he had

discussed the matter with his attorney, his understanding of the strengths and

weaknesses of his case and possible defenses, and his satisfaction with Mr. Tyner's

representation.  The judge also made sure that petitioner knew that he had the right to a

jury trial, and discussed the various rights he was waiving by pleading guilty. (SR at 53-60.)  Petitioner confirmed that he understood all of those things. (*Id.*)  When petitioner stated that he felt he was being "force[ed], threaten[ed], coerc[ed], or pressur[ed]" to plead guilty during his November 18 hearing, Judge Herrick promptly adjourned the proceedings. (*Id.* at 60-61.)  At that time, petitioner had ample opportunity to consider his options and to decide that he did not wish to plead guilty.

Instead, he returned to court on November 23, 2015, and again expressed his desire to plead guilty to the original indictment as proposed at the November 18th hearing, together with the *six* year sentence.  Judge Herrick specifically stated that he had a discussion with Mr. Tyner and the prosecutor, and the judge was "willing to put that same offer back on the table," and that would be a plea to the indictment, Criminal Sale of a Controlled Substance in the Third Degree, *a B felony, as a violent predicate offender* and to indicate to you . . . the plea bargain would be that you would receive the statutory minimum as a violent predicate offender, *six years determinate, three years of post release* . . . ." (SR at 65) (emphasis added).

Judge Herrick then reminded petitioner that on November 18, he completed most of the colloquy before telling the court that he felt that he was being forced to plead guilty. (SR at 65).  The judge then asked petitioner if he wanted to go forward with the "plea bargain that I just *re-described*" to you." (SR at 66).  Petitioner answered in the affirmative. (*Id.*)  The judge again told petitioner that if there was something that he did not understand during the allocution, the judge would "stop the proceeding," and give petitioner a chance to speak with his attorney. (SR at 66).  Petitioner reaffirmed his

answers to Judge Herrick's November 18 questions and completed the plea colloquy, stating that he was "pleading guilty because [he was], in fact, guilty of a criminal sale of a controlled substance in the third degree as charged." (SR at 67-69.)

Based on the above record, it was more than reasonable for the Appellate Division to find, consistent with Supreme Court precedent that petitioner's plea was voluntary, and that he understood the charge to which he was pleading guilty and the length of the sentence he was to receive as a result of his plea. There was no mention of a three and one half year sentence on November 23rd.

In his traverse, petitioner argues that he intended to plead guilty, but misunderstood the charges to which he was pleading guilty. (Dkt. No. 9 at 6-7.) This assertion is also belied by the record, cited above. Judge Herrick's careful explanation demonstrates that petitioner pled guilty with full knowledge and understanding of the plea agreement, including that he was pleading guilty to a class B felony (rather than a class C felony, as described in the July 13 plea offer), and that his guilty plea carried the statutory minimum sentence of six years for a class B felony, not the three and a half-years that would have been available if he had been allowed to plead to the class C felony. (*Id.* at 65-66.)

Petitioner also argues that he waived his suppression hearings based on his understanding that he was going to be sentenced according to the July 13th proposal. The Appellate Division found that the petitioner's waiver of his suppression hearings on July 13th did not prejudice petitioner because he subsequently accepted the new plea offer, and "the waiver of suppression issues is a consequence, not a condition of a

plea." 158 A.D.3d at 954.  As the Appellate Division stated, the petitioner never entered a plea of guilty, so the prosecution did not breach a plea agreement.[10]  The alleged waiver did not render petitioner's subsequent plea "involuntary."

Therefore, the Appellate Division's finding that petitioner's plea was knowingly, voluntarily, and intelligently entered did not "result[] in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or result[] in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

In his traverse, petitioner also states his plea was involuntary because his attorney never informed him that the plea had "changed." (Dkt. No. 9 at 6.) Petitioner alleges that Mr. Tyner, the People, and Judge Herrick worked in concert to confuse petitioner and coerce him into a six-year plea bargain. (*Id.* at 6-7.)  Nothing in the record indicates that this is true.  Petitioner focuses on the July 13th hearing and continues to claim that he is entitled to "specific performance" of the original agreement because he did not understand what was going on.  Even assuming that the July 13th hearing was "unclear" that in order to be allowed to plead to the reduced charge and obtain the three and one half year sentence, he had to plead guilty before Judge Lynch, petitioner clearly understood that at his second appearance on November

---

[10] The court must also note that in *Kernan v. Cuero*, __ U.S. __, 138 S. Ct. 4, 9 (2017), the Supreme Court held that "federal law" as interpreted by the Supreme Court does not "clearly" establish that specific performance was constitutionally required even if the prosecutor does breach a plea agreement *after* the petitioner pled guilty.

18th. He was told several times and in fact, did not plead guilty on November 18th. Even though the Appellate Division summarily decided petitioner's effective assistance claim, it's decision is based on sound reasoning, consistent with Supreme Court precedent. Mr. Tyner's advice to petitioner to waive his suppression hearings or to take the revised plea agreement clearly served a strategic purpose, as required by the "doubly deferential" standard of *Strickland* and §2254(d).

Petitioner received an advantageous plea bargain in the form of a concurrent sentence. (SR at 54.) Petitioner avoided the consecutive sentence sought by the prosecutor, which would have increased his prison time from fifteen years to eighteen and a half-years or to twenty one years if the six year term had been made consecutive, rather than concurrent to the fifteen year term that he was serving as the result of the weapons conviction. (SR at 54.) The judge specifically told petitioner that he was avoiding a longer prison term by pleading guilty. As stated above, if petitioner had been convicted after trial, he would have faced a maximum of 15 years on the drug conviction, based on his status as a violent predicate offender, which could have been imposed consecutively to the 15 year sentence imposed by Judge Lynch. In fact, in his traverse, petitioner does not claim that he is innocent of the charges, he does not wish to withdraw his plea, he argues that he should be given the benefit of his original plea bargain, further supporting the Appellate Division's finding that petitioner's plea was voluntary, and that his counsel was not ineffective in advising petitioner to proceed with the plea.

In his state court appeal, the cornerstone of petitioner's claim of ineffective

counsel was Mr. Tyner's failure to request a read-back of the minutes from petitioner's

July 13, 2015 hearing at his November 18 and November 23, 2105 hearings.

(Petitioner's App. Br., SR at 160.)  Petitioner contended that any "reasonable attorney"

would have requested a read-back of those minutes, and that petitioner was prejudiced

by his inability to hear the details of the plea bargain again. (*Id*. at 160-61.)

Petitioner alleges that Mr. Tyner's failure to investigate this previous offer

resulted in petitioner receiving a six-year sentence instead of a three and a half-year

sentence.  A review of the transcript of the December 28th hearing shows that Mr. Tyner

attempted to reach out to the petitioner in an effort to assist him in avoiding the

possibility that the judge would fail to impose the agreed-upon sentence because

petitioner violated the terms of the plea agreement by denying responsibility during the

PSI. (SR at 89-91).  Petitioner chose to ignore Mr. Tyner's advice and address the court

directly without consulting his attorney. (SR at 91).  The petitioner then attempted to

withdraw his plea. (SR at 93-94).  Petitioner himself asked the judge to "look back on

the minutes" of the July 13th hearing. (SR at 96).  He argued himself that the transcript

would show that he was promised three and one half years in exchange for his plea.

(*Id.*)  Petitioner then stated for the first time that he was not satisfied with Mr. Tyner.

(SR at 97).

Based on the record above, there would have been no reason for Mr. Tyner to

"request a read back," since Judge Herrick was clearly well aware of the proceedings,

had explained the discrepancy between the two offers at the November 18th appearance,

and repeated it several times, including reminding petitioner while he was trying to

withdraw his plea, that the issue had been discussed several times, and that he had

previously stated his agreement with those terms.  The three and a half-year plea offer

was withdrawn by the prosecution long before petitioner pled guilty.  Mr. Tyner's

failure to request a read-back of the stenographic minutes from July 13, 2015 was not

unreasonable and did not prejudice petitioner because the withdrawal of the July 13th

plea proposal was clearly explained to petitioner multiple times on the record and

would not have benefitted petitioner at the December 28th proceeding. (SR at 50-58, 64-

65.)

Petitioner was finally sentenced on December 30, and Mr. Tyner stated for the

record that he had discussed both the predicate offender issue that caused the

adjournment on December 28 as well as the potential violation of the plea agreement

and "what would be necessary on his part to cure that violation." (SR at 105).  He

continued to assist petitioner, notwithstanding petitioner's attempt to take matters into

his own hands and ignore Mr. Tyner's advice.  Ultimately, the petitioner apologized for

his behavior during his motion to withdraw the plea.[11] (SR at 106-107).   Thus, this

court finds that the Appellate Division's decision was not in violation of the AEDPA

---

[11] In his state court appeal, petitioner argued that the judge's finding that petitioner violated his plea agreement must be "vacated" because petitioner's plea was involuntary. (SR at 168).  This issue is actually unrelated to the voluntariness of petitioner's plea or his claim of ineffective counsel. Petitioner raises this issue in his application to this court.  However, the court has considered this request to "vacate" in conjunction with the voluntariness issue in order to avoid any exhaustion issues. In any event, to the extent that the judge found that petitioner violated the plea agreement by failing to accept responsibility for the crime during the PSI interview, the judge did not change his sentence based on that violation and specifically found that the violation was not significant enough to impose a consecutive sentence to the weapons sentence. (SR at 107).  Thus, petitioner was not prejudiced by this finding.

standard and will recommend dismissal of the petition.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that the petition be **DENIED and DISMISSED**, and it is

further

**RECOMMENDED**, that a certificate of appealability be **DENIED**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have

fourteen (14) days within which to file written objections to the foregoing report.

These objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT**

**TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE**

**APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993)(citing

*Small v. Secretary of HHS*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); FED. R.

CIV. P. 72.

Dated: July 31, 2019

**Hon. Andrew T. Baxter**
**U.S. Magistrate Judge**

28